UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COURTNEY WELLS,
next friend of
Mason Brown,

       Plaintiff,                                   Hon. Paul L. Maloney

v.                                                              Case No. 1:20-cv-845

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Allstate's Motions for Summary Judgment. (ECF No. 72 (first motion) and 84 (second motion)). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's first motion (ECF No. 72) be granted and Defendant's second motion (ECF No. 84) be denied.

## BACKGROUND

Courtney Wells (Courtney) and Casey Brown (Casey) were married in 2001. Their ten-year marriage produced two children, one of whom, Mason Brown (Mason), was born in 2002. As of December 3, 2019, Mason was 17 years of age. On this date, Mason, a passenger in a vehicle driven by his father, suffered significant injuries after intentionally exiting the vehicle, while it was in motion, and striking the roadway.

The vehicle Casey was driving was insured by a policy issued by Allstate Property and Casualty Insurance Company (Allstate). Despite this fact, Allstate has refused to pay the cost of Mason's medical care. Mason's mother was insured under a policy issued by Progressive Marathon Insurance Company (Progressive). Progressive has likewise refused to pay the cost of Mason's medical care.

On June 18, 2020, Courtney, in her capacity as her son's next friend, initiated the present action in state court seeking relief from both Allstate and Progressive for their refusal to provide benefits for Mason pursuant to their respective policies. The matter was subsequently removed to this Court. Presently before the Court are two motions for summary judgment by Defendant Allstate. In its first motion, Allstate argues that Defendant Progressive has higher priority in this matter and, therefore, is responsible for the costs of Mason's medical care. In its second motion, Allstate argues that it has no coverage obligations in this matter because Mason was injured as the result of his intentional act of throwing himself from a moving vehicle. Plaintiff and Defendant Progressive have responded to the present motions. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot

merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

This matter was removed to this Court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332. When jurisdiction is premised on diversity, this Court must apply the substantive law as articulated by the highest court of the state whose laws govern the outcome. *See, e.g., Carhartt, Inc. v. Innovative textiles, Inc.*, 998 F.3d 739, 742 (6th Cir. 2021). There is no dispute that Michigan substantive law governs this action.

### I.  Allstate's Motion for Summary Judgment (ECF No. 72)

Plaintiff initiated this action seeking to compel Allstate and Progressive to provide coverage for the injuries her son suffered on December 3, 2019. Allstate argues that it is not obligated to provide coverage because Progressive has higher priority in this matter and, therefore, is responsible for the costs of Mason's medical care.

The Michigan No-Fault Act establishes the order in which potential insurers are responsible for providing coverage. *See, e.g., Griffin v. Trumbull Ins. Co.*, 964 N.W.2d 63, 68 (Mich. Ct. App. 2020). Specifically, Michigan law provides, in relevant part, that "a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. Mich. Comp. Laws § 500.3114(1).[1]

---

[1] For purposes of the present motion, the Court assumes that Mason's injuries were accidentally incurred.

Mason did not have an insurance policy in his name nor was he married. He was, however, a relative of his mother and father both of whom had policies in their own names. Thus, if Mason was "domiciled in the same household" as his mother and/or father he would be entitled to insurance benefits pursuant to their policy. Accordingly, it must be determined whether Mason, as of December 3, 2019, was domiciled with his mother or his father.

To answer this question, an examination of the decision by the Michigan Supreme Court in *Grange Ins. Co. of Mich. v. Lawrence*, 835 N.W.2d 363 (Mich. 2013) is both instructive and dispositive. In *Grange*, the court heard two appeals involving claims for insurance benefits for injuries suffered by children of divorced parents. *Id.* at 365-70. In both cases, the parents had been awarded joint *legal* custody of the children, but only one of the parents had been awarded *physical* custody. *Id.* at 366-68.

After noting that the Michigan No-Fault Act does not define "domicile," the court undertook to articulate a definition thereof. The court observed that a person may have multiple residences, but can have only one domicile. *Id.* at 373. With respect to the distinction between residence and domicile, the court stated, "domicile is acquired by the combination of residence and the intention to reside in a given place. . .If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however, short, will establish a domicile." *Ibid.*

-6-

Turning to the determination of a minor child's domicile, the court noted that "a child's ability to acquire a new domicile is limited in ways that an adult's ability to acquire a domicile is not." *Id.* at 377. Specifically, an "unemancipated child[2], unlike a competent adult, lacks the legal capacity" to choose their domicile. Accordingly, "while intent is critical for determining the domicile of an adult, a child's intent regarding domicile is simply irrelevant." *Ibid.* Rather, a child's domicile "is determined by reference to the domicile of his or her parents." *Id.* at 377-78. While "[t]he inquiry into a child's domicile becomes more complicated when the child's parents are divorced," the court articulated the following holding to resolve domicile questions in such circumstances:

> courts presiding over an insurance coverage dispute involving the minor child of divorced parents ***must* treat a custody order as conclusive evidence of a child's domicile**. Where a court order sets a child's custody or domicile by operation of law, the factual circumstances or the parents' or child's intentions are irrelevant to the domicile determination. Rather, the appropriate analysis is focused on the terms of the custody order. In directing courts to abide by the custody order, we are cognizant that the Child Custody Act draws a distinction between physical custody and legal custody: Physical custody pertains to where the child shall physically "reside," whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare. Because the focus under our common law with respect to domicile mostly concerns a question of location and the same is true with respect to a child's domicile in the instance that the parents are divorced, **the relevant consideration is which parent has *physical custody* under the terms of the order**. By way of example, a child's domicile will be with a parent if the custody order grants that parent primary or sole physical custody, or

---

[2] There is no evidence that Mason was emancipated on the date in question.

-7-

expressly establishes domicile with that parent through a domicile provision, regardless of whether the parents share joint legal custody.

*Id.* at 378-82.

With this understanding as backdrop, the Court turns to an examination of the various orders and activity concerning Mason's custody.

On May 27, 2011, the judgment of divorce terminating the marriage between Courtney and Casey provided that they had joint legal custody of Mason, but that Courtney alone had physical custody of her son. (ECF No. 72-3, 72-4, PageID.1048-69). On November 13, 2013, the Kent County Circuit Court entered an Order modifying Casey's "parenting time" due to his substance abuse and legal issues. (ECF No. 72-4, PageID.1065-69). This Order did not modify the prior determination that Courtney Wells had physical custody of Mason.

On June 1, 2018, the Kent County Circuit Court entered an Order suspending Casey's "parental time." (ECF No. 72-5, PageID.1071). This Order did not modify Courtney as the parent with physical custody of Mason. On January 15, 2019, Courtney moved the court for "100% legal" custody of her son in light of Casey's continued use of illegal drugs. (ECF No. 72-6, PageID.1073-76). On February 22, 2019, the Circuit Court referred the matter to the Kent County Friend of the Court for "a custody reevaluation." (ECF No. 72-7, PageID.1078-79).

On May 31, 2019, a Social Worker/Evaluator for the Friend of the Court issued a Report and Recommendation regarding Courtney's motion to obtain full legal custody of her son. (ECF No. 72-15, PageID.1245-58). In light of Casey's "long-

standing history of substance abuse and his inability to remain sober for a significant period of time," the Evaluator recommended that full legal custody of Mason be awarded to his mother. (*Id.*, PageID.1256). The evaluator further recommended that "all parenting time" between Casey and Mason be suspended. (*Id.*, PageID.1257).

On September 10, 2019, Friend of the Court Referee John Kmetz conducted an "evidentiary hearing." (ECF No. 72-14, PageID.1172-1243). Casey testified that Mason wanted to live with him "full-time." (*Id.*, PageID.1186). Casey testified that he was sober and could, therefore properly care for his son. (*Id.*, PageID.1186-89). Courtney testified that her residence was not "a good spot for Mason right now because he's very defiant." (*Id.*, PageID.1223).

With respect to the issue of Mason's custody, the Referee acknowledged that his authority was limited. Specifically, the Referee observed that while he can "order custody" for any child under the age of 18, a child of 17 (such as Mason) can "vote with his feet" because "police cannot enforce [a custody order] against a 17-year-old." (*Id.*, PageID.1199). Thus, the Referee acknowledged that if he ordered that Courtney be given full legal and physical custody, if Mason nevertheless decided to live with his father, there was, practically speaking, nothing that he or the court system could do about it. (*Id.*, PageID.1199-1201).

The Referee further concluded, however, that insufficient evidence was presented to justify awarding custody of Mason to his father. (*Id.*, PageID.1226, 1240-41). Accordingly, the Referee awarded legal custody of Mason to his parents jointly, but further stated, "I'm leaving physical custody with the mother. . ." (*Id.*, PageID.1232). The Referee did, however, agree to grant Casey "extended parenting time" with his son. (*Id.*, PageID.1240-41). The Referee then instructed the parties to reconvene in four weeks to re-assess the situation. (*Id.*, PageID.1241). There is no indication that the Referee entered any written Order following this hearing.

The Referee conducted a status conference with Mason's parents on October 14, 2019. (*Id.*, PageID.1260-74). The Referee did not alter or modify Mason's custody during this hearing. (*Id.*). Likewise, there is no indication that the Referee entered any written Order following this hearing.

On December 9, 2019, the Referee entered a Temporary Order that granted legal custody of Mason jointly to his parents, but awarded sole physical custody of Mason to his mother. (ECF No. 72-17, PageID.1278). The Referee further ordered that Casey be afforded "reasonable" parenting time. (*Id.*, PageID.1279). On January 30, 2020, the Referee entered another Temporary Order. (ECF No. 72-18, PageID.1282-84). The Referee ordered that Casey "has 100% parenting time for Mason." (*Id.*, PageID.1283). The Referee further indicated that this modification

was "effective 9/5/00[3] until further order." (*Id.*). With respect to custody of Mason, however, the Referee left intact the prior orders awarding joint legal custody to both parents, but sole physical custody of Mason to his mother. (*Id.*, PageID.1282).

In light of this evidence, resolution of the question of Mason's domicile as of December 3, 2019, is both simple and straightforward. The Michigan Supreme Court has clearly held that the domicile of a minor child whose parents are divorced is governed by which parent has been awarded physical custody. As discussed immediately above, Courtney has been awarded physical custody of her son continuously since her divorce from Casey.

Plaintiff and Defendant Progressive attempt to evade this conclusion by arguing that the Referee rendered an "oral order" during the September 10, 2019, evidentiary hearing awarding physical custody to Casey. This argument is rejected. It is a well-accepted principle under Michigan law that "a court speaks through its written orders and judgments, not through oral pronouncements." *City of Sterling Heights v. Chrysler Group, LLC*, 873 N.W.2d 342, 345 (Mich. Ct. App. 2015). In this respect, neither Plaintiff nor Progressive have identified any written

---

[3] The parties argue that the choice of this date by the Referee was a mistake. This appears to be a reasonable conclusion given that Mason was not yet born as of September 5, 2000. To the extent, however, that the parties assert to know what date the Referee intended, they are engaging in speculation, which the Court rejects. The parties could have moved in state court for clarification or correction as to this matter, but do not appear to have done so. This is not the appropriate forum to seek modification of a state court order. Regardless, this particular issue in no way affects the outcome in this matter.

Order that purports that physical custody of Mason rested with anybody other than his mother. To the contrary, every written Order in this matter states that Courtney was awarded physical custody of her son.

Furthermore, even if this Court could consider the Referee's oral statements, such do not qualify as a binding order. Under Michigan law, an oral pronouncement has "the same force and effect as a written order" only where such "clearly communicates the finality of the court's pronouncement" and "contains indicia of formality and finality comparable to that of a written order." *Arbor Farms, LLC v. GeoStar Corp.*, 853 N.W.2d 421, 430 (Mich. Ct. App. 2014). The Referee made no such pronouncements during the hearing in question. To the contrary, the Referee clearly and unequivocally stated that he was "leaving physical custody [of Mason Brown] with [his] mother." The reliance by Plaintiff and Progressive on one or two vague and isolated statements by the Referee hardly constitute "indicia of formality and finality comparable to that of a written order."

The Court recognizes that the Referee may have awarded Casey "100% parenting time" in recognition of Mason's perceived wishes. As previously noted, however, Mason's wishes or intentions vis-à-vis his legal domicile are irrelevant. Instead, as the *Grange* court held, courts "must treat a custody order as conclusive evidence of a child's domicile." In this respect, every custody order in this matter awarded sole physical custody of Mason to his mother. As a result, Progressive has a higher priority under Michigan law regarding coverage for the injuries Mason

suffered on December 3, 2019. Accordingly, the undersigned recommends that Defendant Allstate's first motion for summary judgment (ECF No. 72) be granted.

## II. Allstate's Motion for Summary Judgment (ECF No. 84)

Michigan law provides that an insurer providing personal protection coverage is "liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." Mich. Comp. Laws § 500.3105(1). There exists an exception to this requirement, however, in circumstances where the injuries for which insurance coverage is sought were "suffered intentionally by the injured person or caused intentionally by the claimant." Mich. Comp. Laws § 500.3105(4). Allstate moves to dismiss Plaintiff's complaint on the ground that Allstate is not obligated to pay benefits for Mason's injuries because such were suffered and/or caused intentionally.

To avoid coverage responsibility under the "intentional injury" exclusion, an insurer must establish that the injured person "intended both the act and the injury." *Cruz v. State Farm Mutual Auto Ins. Co.*, 614 N.W.2d 689, 694 (Mich. Ct. App. 2000). It is not sufficient for the insurer to show merely that the injured person's injuries were a reasonably foreseeable consequence of their actions. *See, e.g., Frechen v. Detroit Auto. Inter-Insurance Exchange*, 326 N.W.2d 566, 567-68 (Mich. Ct. App. 1982) (observing that the relevant statute mandates coverage for "accidental bodily injury" not "bodily injury by accidental means"). Furthermore, because Allstate is seeking to invoke an exclusion to insurance coverage, it bears the

-13-

burden to demonstrate that the exclusion applies. *See, e.g., Heniser v. Frankenmuth Mutual Ins. Co.*, 534 N.W.2d 502, 505 n.6 (Mich. 1995).

As alluded to above, on the night in question, Mason was a passenger in a vehicle being driven by his father. Casey was intoxicated, having consumed substantial amounts of alcohol and marijuana throughout the day. (ECF No. 89-1, 89-2, PageID.2338, 2378-79, 2478-79). As Casey drove his vehicle, he continued an argument with his son that had begun earlier in the day. (*Id.*, PageID.2380-86, 2480-83). Mason asked his father on multiple occasions to stop the vehicle so that he could get out and walk. (*Id.*, PageID.2386, 2483). Casey refused and instead demanded that Mason "shut his mouth" and speak "not one more fucking word." (*Id.*, PageID.2386). Soon thereafter, as Casey was turning left through an intersection, Mason opened his door and exited the vehicle. (*Id.*, PageID.2387, 2491-94). There does not appear to be any dispute that Mason voluntarily and intentionally exited the vehicle. Whether Mason intended the harm he suffered is a disputed question of fact, however, which precludes granting Allstate's motion.

Allstate argues that it is entitled to relief because Mason intended to commit suicide when he exited his father's vehicle. In support of this argument, Allstate notes that Mason had previously attempted on several occasions to take his own life. (ECF No. 84, PageID.2005-07). While this evidence is relevant and probative, there is likewise evidence that supports the conclusion that Mason was not attempting to take his own life on the night in question.

-14-

Mason testified that he did not exit his father's vehicle because he wanted to hurt himself, but because he simply wanted to get away from father and discontinue their argument.  (ECF No. 89 at PageID.2491).  But, because his father refused his repeated requests to stop the vehicle, Mason felt compelled to exit the vehicle some other way.  (*Id.* at PageID.2483-92).  Mason testified that when he exited the vehicle it was traveling slow enough that he thought he could do so without suffering injury.  (ECF No. 89-2, PageID.2483-87).  Moreover, while Allstate argues that Mason jumped out of the vehicle head-first, Mason testified that he simply attempted to step out of a slow-moving vehicle.  (*Id.*, PageID.2492-93).

Despite the evidence that Mason did not intend to harm himself when he exited his father's vehicle, Allstate argues that Mason's intent to commit suicide on the night in question can be inferred from his actions.  Allstate is correct that "questions concerning the state of one's mind, including intent, motivation, or knowledge can be proven by circumstantial evidence."  *Bergen v. Baker*, 691 N.W.2d 770, 777 (Mich. Ct. App. 2004).  Likewise, as Allstate notes, "[f]requently, the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor."  *Cipri v. Bellingham Frozen Foods, Inc.*, 596 N.W.2d 620, 627 (Mich. Ct. App. 1999).

The shortcoming in Allstate's argument, however, is that it fails to distinguish between mandatory and permissible inferences. While it may be permissible to draw the inference that Mason intended to injure himself when he exited his father's moving vehicle, drawing such an inference is certainly not mandatory. *See, e.g., Mattson v. Farmers Ins. Exchange,* 450 N.W.2d 54, 56-57 (Mich. Ct. App. 1989) ("even in those cases utilizing a subjective test of intention, where the injury or resulting death is the natural, anticipated and expected result of an intentional act, courts *may* presume that both act and result are intended") (emphasis added). Moreover, the evidence on this question is hardly so one-sided as to compel no other conclusion. To the contrary, the evidence is reasonably susceptible of different interpretations or inferences which precludes granting summary judgment to Allstate on this question. Accordingly, the undersigned recommends that Allstate's second motion for summary judgment (ECF No. 84) be denied.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant Allstate's first motion for summary judgment (ECF No. 72) be granted, and Defendant Allstate's second motion for summary judgment (ECF No. 84) be denied.


OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                Respectfully submitted,

Date: January 20, 2022                     /s/ Phillip J. Green
                                                PHILLIP J. GREEN
                                                United States Magistrate Judge